Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno:  Michael McGinnis 917.654.7095

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

United States of America )
v. )
TRACII SHOW HUTSONA, ) Case No.  21 MAG 1245
a/k/a "Tracii Show," )
a/k/a "Tracii Show Vician" )
)
)

_Defendant_

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_    TRACII SHOW HUTSONA                                                                                           ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

   Wire Fraud (18 U.S.C. Section 1343) and Aggravated Identity Theft (18 U.S.C. Section 1028A)


Date:    02/02/2021                                     _/s/ James L. Cott_
                                                         JAMES L. COTT
                                                         United States Magistrate Judge        _Issuing officer's signature_

City and state:    New York, NY                                              Hon. James L. Cott, USMJ
                                                                               _Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____ at _(city and state)_ _____ . |
| Date: _____                                              _____<br>                                                                                       _Arresting officer's signature_<br><br>                                                                                       _____<br>                                                                                       _Printed name and title_ |

Approved: _____
MICHAEL C. McGINNIS / TIMOTHY V. CAPOZZI
Assistant United States Attorneys

Before:  THE HONORABLE JAMES L. COTT
         United States Magistrate Judge
         Southern District of New York           **21 MAG 1245**

- - - - - - - - - - - - - - - - x
                                :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA        :
                                :   Violations of
            - v. -              :   18 U.S.C. §§ 1343, 1028A, and
                                :   2
TRACII SHOW HUTSONA,            :
     a/k/a "Tracii Show,"       :
     a/k/a "Tracii Show         :
     Vician"                    :   COUNTY OF OFFENSE:
                                :   NEW YORK
                 Defendant.     :
                                :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

DANIEL ALESSANDRINO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
### (Wire Fraud)

1. From at least in or about October 2015 up to and including at least in or about November 2019, in the Southern District of New York and elsewhere, TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, HUTSONA charged, without authorization, tens of thousands of dollars of HUTSONA's personal expenditures to credit card and bank accounts belonging to another individual ("Victim-1"), and in connection therewith

and in furtherance thereof, HUTSONA transmitted and caused to be transmitted interstate wire transfers of funds, including wires through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT TWO
### (Aggravated Identity Theft)

2. From at least in or about July 2016, up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, HUTSONA used Victim-1's social security number in order to obtain a credit card for Victim-1's financial account, during and in relation to the wire fraud offense charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b) & (c)(5), and 2.)

The bases for my knowledge and for the foregoing charges are, in part and among other things, as follows:

3. I am a Detective with the NYPD. I am currently a Task Force Officer assigned to the Financial Crimes Task Force, which investigates financial crimes in cooperation with the United States Secret Service. I have been personally involved in the investigation of this matter. This affidavit is based upon my investigation, my conversations with other law enforcement agents, and my examination of reports, records, and other evidence. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### OVERVIEW

4. Since at least in or about October 2019, the NYPD and the United States Attorney's Office for the Southern District of New York have been conducting an investigation into the

2

embezzlement of hundreds of thousands of dollars as part of a confidence scheme orchestrated by TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant. As detailed below, the investigation has revealed that HUTSONA gained the confidence of Victim-1 and used her employment as an assistant to Victim-1 to steal or otherwise obtain money from Victim-1 without the authorization or approval of Victim-1. In total, HUTSONA stole and spent over $1 million of Victim-1's money in order to finance her own luxury lifestyle.

## THE DEFENDANT

5. Based on my review of public source information, I have learned, in part, the following:

    a. TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, is listed as the "founding partner" of Elite Lux Life and claims "more than 20 years in the entertainment and V.I.P. service industry," including "booking models, musicians, and dancers in Japan."

    b. "Elite Lux Life" markets itself as a full-service concierge firm that "accommodates the most discerning traveler" and is the "go-to service for wanting to enjoy the very best life has to offer." Elite Lux Life offers an "unbeatable global lifestyle management service." In its social media posts, Elite Lux Life markets itself as a "VIP Concierge Company (SPECIALIZING IN THE GOOD LIFE) Jets-Yachts-Vacation Rentals-Exotic Vehicles."

## THE SCHEME

6. Based on my participation in an interview of Victim-1, I have learned, in part, the following:

    a. In or about October 2015, Victim-1 hired TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, to assist her as a personal assistant and/or concierge at her home in California. Victim-1 agreed to pay HUTSONA's company, Elite Luxury Lifestyles, a monthly fee for these services. To assist HUTSONA in the performance of her duties, Victim-1 provided HUTSONA with access to some of Victim-1's financial information.

    b. In or about September 2018, a financial advisor for Victim-1 (the "Financial Advisor") advised Victim-1 that Victim-1 was spending significant sums from her financial

3

accounts. Subsequently, Victim-1 confronted HUTSONA regarding potentially unauthorized expenses made against Victim-1's financial accounts.

c. During the confrontation, HUTSONA confessed to Victim-1 that HUTSONA had used Victim-1's financial accounts for personal use and without authorization.

d. Following the confession, on or about September 10, 2018, HUTSONA, the defendant, and Victim-1 signed an agreement, labeled "Personal Plea Agreement." Based on my review of a copy of the Personal Plea Agreement, the agreement stated that HUTSONA had obtained an "additional user card in [HUTSONA's] name" and that HUTSONA "had been using [Victim-1's] account since July 2016." The agreement further stated that HUTSONA needed to repay $307,498.02 to Victim-1.

e. Nonetheless, after the Personal Plea Agreement was entered between the parties, including in the days after the Personal Plea Agreement was signed, HUTSONA continued to use Victim-1's financial accounts without permission.

f. In or about September 2019, after Victim-1 discovered additional unauthorized charges made by HUTSONA, following HUTSONA's execution of the Personal Plea Agreement, Victim-1 terminated her relationship with HUTSONA.

7. Based on my review of financial records obtained from multiple financial institutions for accounts maintained by Victim-1, I have learned, in part, the following:

a. Victim-1 maintained 529 college savings plans on behalf of Victim-1's children (the "529 Savings Accounts").

b. Victim-1 maintained a checking account at a particular bank ("Bank-1" and "Bank-1 Checking Account").

c. In multiple checking and savings accounts maintained by Victim-1, TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, was added as an additional account holder for the account and, in certain circumstances, provided with a debit and/or credit card in the name of HUTSONA. Specifically, HUTSONA gained access to the following:

i. A checking account provided by another bank ("Bank-2" and "Bank-2 Checking Account-1").

4

ii. A second checking account provided by Bank-2 ("Bank-2 Checking Account-2").

iii. A savings account provided by Bank-2 ("Bank-2 Savings Account").

iv. A credit card provided by Bank-2 ("Bank-2 Credit Card-1").

v. A second credit card provided by Bank-2 ("Bank-2 Credit Card-2").

vi. A credit card provided by Bank-1 ("Bank-1 Credit Card") (collectively, the "HUTSONA Fraud Accounts").

d. Based on my participation in an interview of Victim-1, I have learned that Victim-1 never authorized HUTSONA to be added to the HUTSONA Fraud Accounts or to obtain a debit and/or credit card for the HUTSONA Fraud Accounts.

e. Based upon my review of account documentation for the Bank-1 Credit Card, I have learned that in or about July 2016 an application was submitted for a credit card to be issued in the name of "Tracii Show," but linked to the account for Victim-1 (the "Fraudulent Credit Card Application"). The Fraudulent Credit Card Application included the social security number of Victim-1. As noted, Victim-1 did not authorize the Bank-1 Credit Card to be issued in the name of "Tracii Show."

8. Based on my review of Bank-1 and Bank-2 records for the HUTSONA Fraud Accounts, and my discussions with Victim-1 and representatives for Victim-1, I have learned, in part, the following:

a. Between on or about October 2015 and on or about November 2019, TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, made over $1.4 million in payments and purchases from the HUTSONA Fraud Accounts. These purchases include payments for personal expenses, such as mobile phones, restaurants and nightclubs, luxury hotels, and jewelry. These purchases also include payments to Elite Lux Life, which is operated by TRACII SHOW HUTSONA, the defendant, *see supra* ¶ 5.

b. To cover the purchases made by the HUTSONA Fraud Accounts, money was transferred from Victim-1's Bank-1 Checking Account and Victim-1's 529 Savings Accounts into the HUTSONA Fraud Accounts. For instance, over the course of the scheme,

5

approximately $480,000 was transferred from the 529 Savings Accounts into Bank-2 Checking Account-2. Likewise, approximately $960,000 was transferred from the Bank-1 Checking Account into the HUTSONA Fraud Accounts, including approximately $798,000 to pay bills for the Bank-1 Credit Card and Bank-2 Credit Card-2.

    c. Accordingly, based on my training and experience, and my involvement in this investigation, it appears that HUTSONA, the defendant, obtained without authorization credit and/or debit cards in her own name that drew against accounts maintained by Victim-1. HUTSONA charged personal and other expenses to these same credit and/or debit cards and paid off those expenses by transferring funds from the college funds held on behalf of Victim-1's children and from a checking account maintained by Victim-1 at Bank-1. In other words, it appears that HUTSONA stole money set aside for the education of Victim-1's children to fund her own luxury lifestyle.

### THE COVERUP

9. Based on my review of materials provided by Bank-1, I have learned, in part, the following:

    a. Bank-1 provided financial management services for Victim-1 out of its offices located in the Southern District of New York.

    b. Representatives from Bank-1, including the Financial Advisor, communicated by email with TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, regarding Victim-1's financial accounts, including from locations in the Southern District of New York.

    c. In or about October 2019, following Victim-1's termination of HUTSONA from her employment, Victim-1 reported fraudulent expenditures on Victim-1's financial accounts to Bank-1. As a result, Bank-1 began investigating these fraudulent expenditures.

    d. In or about November 2019, Bank-1 received a fax of a "notarized" document purporting to be a "Power of Attorney" dated February 15, 2017 (the "Power of Attorney"). The Power of Attorney stated that, "effective immediately," HUTSONA would serve as Victim-1's "attorney-in-fact" and have control over Victim-1's "Banking and other financial institution transactions," among other items. The Power of Attorney purported to be signed by Victim-1. Based on my discussions

with Victim-1, I have learned that Victim-1 did not provide HUTSONA with a power of attorney over Victim-1's accounts, did not sign the Power of Attorney submitted to Bank-1, and did not recognize her purported initials on the Power of Attorney.

      e. Based on my discussions with the notary listed on the Power of Attorney (the "Notary"), I have learned that the Notary's logbook reflects an entry on February 15, 2017 for a "personal letter" for Victim-1. The Notary does not recall ever authorizing a power of attorney for either Victim-1 or HUTSONA and the Notary did not recognize the Power of Attorney. The Notary observed that the notarized stamp and documentation on the Power of Attorney appeared at an angle and did not appear professional.

      WHEREFORE, deponent prays that an arrest warrant be issued for TRACII SHOW HUTSONA, a/k/a "Tracii Show," a/k/a "Tracii Show Vician," the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

/s/Daniel Alessandrino
DANIEL ALESSANDRINO
Detective
New York City Police Department

Sworn to me through the transmission
of this Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this 2nd day of February 2021

JAMES L. COTT
United States Magistrate Judge